1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IVAN LONG,

           Plaintiff,

   v.

CORAGGIO DESIGN, INC.,

           Defendant.

Case No.  C04-1406L

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant Coraggio Design, Inc. d/b/a Coraggio Textile ("Coraggio").  (Dkt. #22).  Plaintiff, who is African-American and proceeding *pro se*, brings claims arising out of his employment with Coraggio, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq.* ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12201, *et seq.* ("ADA"); the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("WLAD"); and retaliatory discharge pursuant to RCW 51.48.025.  Coraggio moves to dismiss all of plaintiff's claims.  Plaintiff has not responded to the motion for summary judgment.

For the reasons set forth below, the Court grants defendant's motion for summary judgment.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

## II.  DISCUSSION

**A.    Background Facts.**

Coraggio sells high-end textiles through its central office in Bellevue and through showrooms located in other states.  Plaintiff was hired in 1989 as a shipping receiving clerk in Coraggio's warehouse located in Bellevue, Washington.

Plaintiff alleges that he was denied several promotions because of his race.  Coraggio responds that in 1991, 1995 and 2000, it selected more qualified candidates to fill positions for which plaintiff had either formally applied or informally expressed interest.

Plaintiff also alleges that he was discriminated against based on his disability and not reasonably accommodated.  On December 16, 2002, plaintiff injured his wrists while lifting a heavier than normal workload.  When he returned to work after the holidays, he was given light-duty work while Coraggio attempted to ascertain the extent of his injuries and physical capabilities.  On February 21, 2003, plaintiff walked off his job without explanation.

While plaintiff was absent from work, Cheryl Holman, the general manager and vice president of operations, obtained a physical capacities evaluation from plaintiff's physician and evaluated whether the company had any light duty work that plaintiff could physically perform.  Because of plaintiff's extensive physical restrictions, Ms. Holman was unable to locate a light duty job for him, and neither plaintiff nor his physician suggested any accommodation which would allow him to perform the essential functions of his position.  Ms. Holman subsequently authorized plaintiff to take a disability leave of absence of up to six months.

While plaintiff was on leave, Coraggio kept his job open, although doing so resulted in having only one worker to perform work normally performed by two.  Meanwhile, Coraggio hired a vocational rehabilitation specialist to evaluate plaintiff's job duties and write a job description.  According to the written job description, plaintiff's job required, among other physical tasks, frequent lifting of up to 35 pounds and occasional lifting up to 100 pounds.  After the job analysis process was complete, Coraggio requested that plaintiff be examined by his

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

1   doctors to determine if he could perform the physical requirements of the job as set forth in the

2   job description.

3         In late June 2003, plaintiff's physician released him to work with restrictions on the

4   amount he could lift.  Plaintiff returned to work on June 30, 2003, and Coraggio accommodated

5   his lifting restrictions.  However, plaintiff complained and refused to perform other tasks,

6   including any lifting, grasping, pushing and pulling, reaching, handling, fingering, and using

7   scissors or a box knife.  Management placed him on leave again with instructions to return to his

8   doctor.  Plaintiff's physician provided a note stating that plaintiff was unable to perform the

9   duties of his current position and recommended that he begin vocational rehabilitation.  Because

10  plaintiff failed to provide any information regarding when or in what capacity he could return to

11  work, Coraggio filled his position on July 23, 2003.  Coraggio notified plaintiff on August 29,

12  2003 that his medical leave was expiring on September 1 and that because they had no

13  information from his medical providers regarding if or when he could return to work and

14  perform the essential functions of his job, his employment would be terminated effective

15  September 1, 2003.  Plaintiff was discharged on September 1, 2003.

16  **B.      Summary Judgment Standard.**

17        On a motion for summary judgment, the Court must "view the evidence in the light most

18  favorable to the nonmoving party and determine whether there are any genuine issues of material

19  fact . . . ."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences

20  supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v.

21  Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might

22  resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W.

23  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

24  **C.      Plaintiff's Claims of Discrimination.**

25        Plaintiff has not opposed the motion, and the Court considers the failure to respond as "an

26  admission that the motion has merit."  Local Rule 7(B)(2).  The Court also considers whether

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 3

1  any genuine issues of material fact remain.

2       **1.**     **Discrimination Based on Race.**

3       Plaintiff stated in interrogatory responses that he applied for the disputed promotions in

4  January 1999.  Coraggio has produced a sworn declaration stating that the positions were filled

5  by 2000.  Plaintiff filed his lawsuit on May 11, 2004, well after the expiration of the three-year

6  statute of limitations period applicable to his WLAD and Title VII claims.  See RCW

7  4.16.080(2).   Plaintiff has provided no evidence that Coraggio failed to promote him at any time

8  within the limitations period.

9       Plaintiff's Amended Complaint does not specifically allege that he was discharged

10 because of his race.  Even if it did, plaintiff has not provided any evidence to support that claim

11 or to show that Coraggio's stated reason for his discharge, his physical inability to perform his

12 job duties, was in fact a pretext for race discrimination.

13      Finally, plaintiff's Amended Complaint alleges that he was promoted to "procurement

14 manager" in 2001, but "he was not given the responsibilities of other managers, including

15 supervising employees or being invited to managerial meetings."  Amended Complaint at ¶ 17.

16 Defendant did not directly address this allegation in its motion.  Assuming the allegation is not

17 time-barred, plaintiff has not identified any similarly-situated employees or stated the races of

18 the individuals who were allegedly treated better than he was.  Accordingly, plaintiff has not

19 made out a *prima facie* case of race discrimination and his claim fails as a matter of law.

20      **2.**     **Discrimination Based on Disability.**[1]

21      Plaintiff's Amended Complaint, though vague, appears to allege that Coraggio failed to

22 accommodate him in two ways.  First, plaintiff alleges that although he was able to work in June

23 2003, Coraggio sent him home with instructions to return to his physician.  Second, plaintiff

24 alleges that although his doctor released him to work in September 2003, Coraggio discharged

25 _____

26      [1] The Court assumes, as did defendant, that plaintiff is disabled for purposes of the ADA
and the WLAD.

27

28 ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

him before he was able to return to work.  Defendant has provided a sworn declaration that plaintiff was not capable of performing several of the essential functions of his position when he returned to work in June 2003, and plaintiff's physician confirmed in July 2003 that plaintiff was unable to perform his job duties.  Plaintiff has not identified any other job he could have performed, or any accommodation he should have received.  Plaintiff's conclusory assertions that he was able to work cannot create a genuine issue of fact, and his failure to accommodate claim fails as a matter of law.[2]

Assuming that plaintiff's Amended Complaint also alleges a disparate treatment claim based on his discharge, that claim also fails because plaintiff has not shown that he was performing satisfactory work at the time of his discharge.  See, e.g., Anica v. Wal-Mart Stores, Inc., 120 Wn. App. 481, 488 (2004) (setting forth elements of *prima facie* case for claim of disparate treatment based on disability under the WLAD).  Furthermore, Coraggio had a legitimate, non-discriminatory reason for terminating his employment, and plaintiff has presented no evidence that the stated reason was a pretext for discrimination.

Finally, the Amended Complaint alleges, "Defendant's action as alleged herein, including termination, while Plaintiff was on Labor & Industry disability leave was also a violation of RCW 51.48.025."  Amended Complaint at ¶ 23.  Summary judgment is appropriate because plaintiff has offered no evidence of a causal connection between the filing of his claim and his discharge.  See, e.g., Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wn.2d 46, 68-69 (1991).

### 3.    Negligent or Intentional Infliction of Emotional Distress.

The conduct plaintiff alleges, even if true, is not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and regarded as atrocious, and utterly intolerable in a civilized community."  Washington v. Boeing, 105 Wn. App. 1, 17 (2000)

---

[2] "In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements. . . .  The worker must establish specific and material facts to support each element of his or her prima facie case."  Marquis v. City of Spokane, 130 Wn.2d 97, 105 (1996).

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 5

(internal citation and quotation omitted).  Furthermore, plaintiff has not offered any medical evidence to support his emotional distress claim, or shown that Coraggio owed him a duty to avoid the inadvertent infliction of emotional distress.  See Snyder v. Med. Serv. Corp., 145 Wn.2d 233, 244-45 (2001) (upholding dismissal of emotional distress claim).  Summary judgment is therefore appropriate on plaintiff's intentional and negligent infliction of emotional distress claims.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. #22).  The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 26th day of April, 2005.

*Mht S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 6